Our final case this morning is number 2013-1031, Deep Nine Corporation v. Barnes & Oakland. Good afternoon, Your Honors.  The District Court erred in granting summary judgment of non-infringement on each of the three alternative theories presented by Deep Nine in this case. First, on the issue of single-party direct infringement of the method claims, this Court's ruling in SERP is controlling and requires reversal. SERP held that unclaimed predicate steps are not part of the infringement analysis and cannot give rise to divided infringement. In particular in SERP, the claim term was... SERP noted that there was no downloading step and there is a downloading step here, right? The step in SERP, there is a downloading step here. The step in SERP was processing. And the SERP argued there that the step of processing had to be first involved initiating the process of downloading. But we noted specifically there was no downloading step, right? There was no downloading step there. So it's a distinction. So it is a distinction. However, the argument for downloading was that what the user had to do was to enable the software and the chips, the SERP chips in that case, and that those things had to be done before the step of processing could be done. And this Court held that the step of processing was performed even though it was on the end-user GPS device, was performed by SERP or was attributable to SERP. What about the fact that here the specification in describing the present invention talks about user involvement, user activity? So the specification does describe in some places user involvement and in other places, for example, Column 5, says to allow the updating from Column 5, Line 19, minimal processor involvement to allow the updating method to occur transparently in the background, i.e. without the user's knowledge or input. And that phrase appears several places throughout the specification. But the ultimate question... What's in this Column 5? Approximately Line 19, and it appears again in Column 6 and then elsewhere in the specification as well. Did you cite SERP to the District Court? We did. It was cited, albeit for a different purpose, in our opposition to Barnes & Noble's motion for summary judgment. I believe we cited it there for the Section 101 issue. What we cited to the District Court, which is to the same effect, is the GIRAFFA ruling that was decided by the District Court for the District of Delaware. So all you cited to the trial court here was the first GIRAFFA ruling, which ultimately got changed when the claim construction changed, but you didn't cite SERP even though it was out there? We didn't cite SERP for this purpose at that time, Your Honor. We did cite it, however, in our blue brief, relying on it here, as well as the persuasive value of the GIRAFFA ruling. In order for this entire process to occur, isn't it true that the end user has to remain connected to the Internet throughout the whole time or the downloading would stop and everything would cease? Yes, it's true. Well, I don't know the answer to whether it has to occur in one continuous connection to the Internet, but it's true that there has to be connection to the Internet for the downloading to occur. And that is addressed by the advanced software design versus FISERP case, which describes things like being connected to the Internet as being part of the defined environment in which things occur. Excuse me, the structure of the network is the defined environment that's described in the advanced software design. Sure, you could say that it's in a setting where there's an Internet, but here you've got the downloading is a limitation in the claim itself. The downloading is a limitation in the claim and it is capable of being performed and is performed in our infringement analyses entirely by Barnes & Noble software that operates automatically to do the synchronization.  Assuming that the end user does not stop and assuming that the connection is present from the beginning. Now, the distinction that you're drawing is one that is perhaps illustrated by the two GIRAFFA cases where the issue there was the displaying thumbnail images and the court found in GIRAFFA 2 that the act of mousing over or clicking on was somehow sufficiently related to the method claim of displaying to be within the meaning of that term to give rise to a divided infringement issue. But where the image displayed automatically, there was no divided infringement issue. In both instances and indeed in many of the cases that have been cited here, being connected to the Internet as a predicate step is something that is presumed to occur. It's outside the explicit range of the claimed limitations. So you got a situation where the specification says part of the present invention involves steps by the user, but you're saying that's not really part of the claims. Some of the steps by the user, I understand you may be referring to the authentication steps. There are several steps that are described in the specification, but those are not part of the five steps that are included in, for example, Claim 1 of the 405 patent. Claim 1 of the 405 patent is a method claim with five steps identifying a module block on a first device. Well, is there any distinction between that claim and the others in terms of user participation? No, the claims that are asserted here are all... I'm talking about the unasserted claims. Do any of the unasserted claims talk more specifically about user involvement? I do not know the answer to that. There are a large number of claims in these two patents and the parent that include a lot more detail for the specification. But the claims that we have asserted are ones that can be performed entirely automatically by the software without user participation. Barnes & Noble says in its brief that you made no separate arguments regarding Claim 24 other than incorporating by reference. That's actually not accurate. We've cited in Mr. Gray's expert report at pages 4875-76, A4916, A5000, and A5018, repeated instances describing Mr. Gray's setting forth opinions both in the body of his report and in his claim charts identifying the separate infringement analysis for the Beauregard claim that tracks this court's ruling in Finjen that treats Beauregard claims separately. Even in Finjen where the software was delivered on a locked basis and was therefore not... it had to be unlocked before it could be performed. It was still an infringement of the Beauregard claim. That may be that there was testimony to that effect. But in your briefing, and this is at 42, 46, and 47, you said to the extent BNN is instead arguing merely that Claim 24 is subject to the same divided infringement challenge as the asserted method claim, then BNN's argument also fails for the reasons set forth above. That's the extent of it. You didn't make any separate argument in the briefing, right? In the briefing before this court, we did... No, no, I'm talking about below. At the district court, it was... that may have been all we argued to the district court. It was unclear from Barnes & Noble's motion what exactly the basis for their argument was. It was ambiguous, and so we did not address that specific issue. It became clear via the district court's ruling and the briefing here that was something that was being argued, and we think that's directly on point with the Finjen case. I'd also like to address the district court's ruling denying leave to amend to assert joint indirect infringement following this court's ruling in Akamai. As this court has ruled on a number of occasions, in Akamai itself and more recently in the Move and Aristocrat cases that we cited in our Rule 28J letter, because of the change of law... Those were all cases, though, in which the joint infringement argument had been raised. They were not cases in which single-actor infringement had been alleged, and then Akamai came down and they were allowed to change their theory. So I'm not aware... Is my recollection correct? That's definitely the case for Akamai, and yes, that's correct for all three of those cases. There's not any authority that we've been able to find for the proposition that before you can assert a claim for indirect infringement, joint or otherwise, you first have to have asserted a claim for joint direct infringement. But I think the reasoning of Akamai is having raised a joint infringement claim and having been surprised by a new theory that you ought to be able to go back and assert the new theory. Whereas here, you had a single infringement theory only, and you're saying, oh, well, now that we've got Akamai, we'd like to change it to a joint infringement theory relying on Akamai. That seems to be quite different. So two points in response to that, Your Honor. The first is that we raised in our summary judgment briefing in footnotes three and four of our summary judgment brief the pendency of Akamai as well as the indirect infringement theory. And the second is that we did allege adequately under the local rules a theory of joint infringement, joint direct infringement. We identified in our preliminary infringement contentions the role that was played by the software on the NOOC and by the software on the servers throughout the process. And the local patent rule 120D requires only that the role be defined. So the district court, you say, misinterpreted its own rule. Yes. The district court interposed additional requirements beyond those that are expressly set forth in the rule. It requires identifying the role. It does not require using the words joint infringement. It does not require identifying the parties themselves. But doesn't the district court get deference from us with respect to that analysis? I mean, we'd have to find an abuse of discretion in that regard, wouldn't we? That's right. The district court's interpretation application of its local rules is subject to abuse of discretion. However, here it's our view that by interposing additional requirements beyond those expressly set forth in the rule, the judge has applied additional requirements beyond those of the rule and is subject, therefore, to Rule 83B as that's applied by this court in the MIT case. And so in that sense, we've been subjected to a penalty by virtue of this additional requirement that's not expressly set forth in the rules. And that is a sufficient error to warrant reversal, even under an abuse of discretion standard. If you were to assert, putting aside the Akamai issue, if you were to be able to assert a straight up joint infringement analysis, how do you satisfy the direction and control test? The direction and control test we would satisfy by pointing to the act that is performed by the software automatically on the NOOC device. And the evidence that we cited in our briefs that was not considered by the district court would satisfy that. It's our view that the test is not direction and control in connecting to the internet, but rather direction and control to the extent that what the NOOC device does automatically by virtue of the software is something that is either attributable to Barnes & Noble or if it's attributable to the NOOC by virtue of it being in the possession of the NOOC owner, attributable to that owner, it's done under the direction and control because the software does it automatically. The NOOC devices are designed for use... Software doesn't do it automatically if we say that the downloading step requires a user connection to the internet. There's no direction and control over that step if it, in fact, is part of the claim. The downloading step, the term downloading was not construed below. No, but isn't, am I not correct that if we were to say to you, you lose on single-factor infringement because downloading step is part of the claim, then when you get to direction and control, there's no direction or control by Barnes & Noble over that particular step, right? There is no direction or control by Barnes & Noble over connecting to the internet. But that would be exactly like muni-auctions, right? No, muni-auction and BMC and indeed McKesson and Global Patent Holdings, a district court case that was cited, and even MOVE and Aristocrat were all cases where the claim language expressly required the participation of two parties and where it was not disputed that there was a joint infringement issue. This case is one where the claim language and the structure of the claim language is more like that in CERP, in the giraffe case. That's just an argument that single infringement, you win on single infringement. It's not an argument that there's direction and control over this additional step that hypothetically is read into the claim. To the extent that what happens on the nook is attributed not to Barnes & Noble but to the user, the things that happen on that nook are done under the control of the software automatically and that is the basis for our argument of direction and control. Okay, I think we're out of time. We'll give you two minutes. Okay, thank you. Mr. Quinn. Good morning, Your Honors. In this case, the user of the nook device is required to cause or perform two steps in the method at issue here. The user must establish and maintain a connection with the common communications network that's referred. This is set forth in the claim language itself and that's what makes this case very different than the CERP case that's referred to. The mere reference to the word downloading. Downloading via the communications network, the common communications channel, which is part of the structure that's outlined in the patent. And yes, that's an important language. I think counsel just said that that is a limitation of the patent. Do we have a problem in that downloading was never considered? I don't think so, Your Honor, because in ruling on summary judgment, a court needs to be able to interpret language, even language which wasn't the subject of the Markman hearing. This is an issue that was raised in the reply brief by Deep Nine, so we didn't have an opportunity to cite the court to a decision. The Jack Gutman decision wasn't cited in our brief because this issue didn't come up until the reply brief. In that case, this court said that courts may engage in a rolling claim construction. So even if this is regarded as claim construction, there's nothing inappropriate about the court at the time of summary judgment construing the claim. But it would be argued that what the court was doing here is just plain ordinary interpretation to the language of downloading, which was included in the claims of the patent. So what's the plain and ordinary meaning of downloading? There has to be an established connection with the common communications channel, and it has to be maintained. And their expert acknowledged that at any point that we're interrupted, this process can't continue. It requires the participation of the NOOC user. And in the CERF case, this court was clear that that was very different because the claims in that case did not require downloading. What required was receiving data, transmitting data, representing data. I mean, this patent presumably could have been written a different way, written from the standpoint, say, of one of the terminals and talked in terms of receiving data in the same fashion. For whatever reason, we don't have anything in the record on that. That's not how this patent was written. It was written in terms of which requires establishing the common communications channel and maintaining it in order for the synchronization that's referred to to be completed. In fact, an oral argument before the district judge, Deep Nine conceded that without that, the synchronization would not happen. It could not happen. And their expert conceded that as well. If I could turn then to the Beauregard issue. Actually, we believe it would – I think it's the case not only that in their briefs before the district court, did they say that the analysis was no different, and that's at A4247. It says the analysis should be no different under the Beauregard claim. But also their expert, if you look at the claim chart, which appears in the record at A3512, the expert said it's exactly the same. The analysis is exactly the same. So we submit that if there were any additional claims there that could be made with respect to the Beauregard claim, those have been waived. And in any case, they rise and fall method. Exactly. With respect to the joint infringement, again, as Your Honor pointed out, I think the district court is entitled to considerable discretion in interpreting their own local rules. Here the local rule didn't require that just the role of the devices be described. This is local rule 120D, which is what DEEP-9 says. DEEP-9 says we describe the role of the devices. That's completely beside the point, which is what are the roles, if you're going to assert a joint infringement analysis, what are the roles of the parties involved in that joint infringement? And that's what the local rule requires. 120D says if it's based on joint acts of multiple parties, the role of each such party in the direct infringement must be described. At no point, no point anywhere in the record, at any time during the 18 months that this case was pending before the district court, did DEEP-9 ever set forth any joint infringement theory and describe any separate rules for any of the parties. Given that ECMI, at least by all accounts, was a surprise for some people, that's the way it came out, wouldn't it be fair to say, all right, maybe they didn't have a joint infringement theory because they didn't think they could prove direction and control over our then current state of the law, but given that there was basically a sea change, shouldn't they be allowed to go down that road? This isn't the usual case where we have a request for an amendment, Your Honor. This is not a case, for example, where there's any claim that there are new facts that came up in discovery or that there's a new legal theory based on existing allegations in the complaint. This is a case that was litigated for 18 months under a single-actor direct infringement theory. That was what they consistently maintained, represented to the court. Unlike the other cases that Your Honor has referred to, there was no claim here or suggestion that anyone else was involved in the infringement or that there was any type of inducing claim. So this really represents, yes, it was a huge change in the law, but this would be a fundamental change in the plaintiff's theory of their case and what they represented to the court. And we submit that that type of opportunistic amendment, which as a result of a change in the law, that type of opportunistic amendment should not receive the deference or is not the type of amendment that should be liberally granted. I would submit that even to this point, at no point, has there been any suggestion as to how they could make out an induced infringement theory. When was the grant of rehearing in Akamai? I think it was about 18 months before the decision. What was the stage of this case at the time we granted rehearing in bank? What I'm told, Your Honor, is this case had just been filed at the time of the grant of rehearing. So, of course, what under Akamai, and the induced infringement theory, there's a requirement of being able to show a specific intent, and there's been no hint, no suggestion of how they could possibly show that Barnes & Noble acted with a specific intent to encourage a NOOC user's infringement. It's conceded, it's common ground, that Barnes & Noble didn't have any knowledge of this patent until the complaint was filed. The Akamai case itself reiterated the long-established rule that induced infringement requires a knowingly, a knowing inducement, a specific intent to encourage another's infringement. If anything, good faith would be a defense to a specific intent standard, as we understand what the law requires here. And I think under the record here, clearly Barnes & Noble has a very powerful case of good faith. After all, we got summary judgment on this claim. So this is not a case where it's fortuitous that a change in the law happened to coincide in the middle of a briefing on a summary judgment motion. But under the circumstances of this case, we think the district court properly exercised its discretion not to permit that amendment. Are you saying it would be a futility? It would be a futility, exactly. Nothing else? Nothing else, Your Honor. Thank you. Yes, I'd like to very quickly address three points that have been in response. The first one is that the proposed construction of downloading to include the act of connecting to the Internet would actually conflict with the claim constructions below. In particular, the Barnes & Noble's proposed claim constructions regarding order of performance of the three identifying steps in the sense that those are required to be performed in the order recited and if connecting to the Internet becomes part of downloading, which is the fourth step, that would jumble things up. And so it's inconsistent with their proposed claim construction. The next point I wanted to make is that regardless of the theory of to whom the act that's conducted on the NOOC device is attributed, it's the same technical evidence that would be presented at trial for that. It's the same software, and the only question is, is it attributable to Barnes & Noble directly or to the NOOC user through inducement or through some theory of direction and control, but it's the same technical evidence. If right after this case was filed, you knew that rehearing in bank was granted in Akamai, and that rehearing order, if I recollect correctly, suggested that you might change the standard for joint infringement in order to liberalize it. Why at that point, why didn't you seek to amend to state a joint infringement theory? Your Honor, I will have to stand by the proposition that we believe our contentions at that point adequately disclosed both the direct and joint infringement theories. The pleadings themselves also are sufficient to allege both theories. And on the last point, the futility point that Barnes & Noble raised, I think there's a growing body of case law, including In re Bill of Lading and a number of cases that have recently come out of the District of Delaware, specifically on the issue that post-complaint, that the complaint serves adequate notice for inducement and that a course of conduct that's staying the course after a complaint is filed is sufficient to at least state a cause of action for induced infringement. And so it would not be futile, and we ought to be given the opportunity to replead on remand. Okay. Thank you, Mr. Manuel. Thank you. I'll admit it. We thank both counsel. And that concludes our session.